PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
09/20/99
THOMAS K. KAHN
CLERK

No. 97-6984

D.C. Docket No. CV-97-A-171-S

ROGER WHATLEY, SR.,

Plaintiff-Appellant,

versus

CNA INSURANCE COMPANIES,
BAKER BROTHERS, INCORPORATED., et al.,

Defendants-Appellees.

Appeal from the United States District Court
for the Middle District of Alabama

**(September 20, 1999)**

Before TJOFLAT, Circuit Judge, GODBOLD and HILL, Senior Circuit Judges.

PER CURIAM:

Roger Whatley brought this action under the Employee Retirement Income

Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"), to recover disability

benefits from Continental Casualty Company ("CNA"),[1] Baker Brothers, Inc., and Baker Brothers, Inc. Long Term Disability Plan ("the Plan"). The district court granted CNA's and the Plan's motion for summary judgment on the ground that Whatley's employment with Baker Brothers, Inc. was terminated before Whatley met the requirements for benefits under his disability plan.[2] We conclude that there are disputed issues of material fact and that judgment as a matter of law was not appropriate. We thus vacate the entry of summary judgment and remand for further proceedings.

I.

Roger Whatley went to work for Baker Brothers, a wholesale heating and air conditioning distributor, in 1973. From that time until his termination, on October 2, 1995, he was employed in various capacities. By 1995, he was working as an outside salesperson in Baker Brothers' store in Dothan, Alabama. In late 1995, Baker Brothers decided to close its Dothan store; Whatley was informed he would lose his job when the store closed on December 31. On Monday, October 2, 1995, Baker

---

[1] Continental Casualty Company was designated as "CNA Insurance Companies" in the original complaint.

[2] By stipulation of the parties, Baker Brothers was dismissed from the case prior to the entry of summary judgment. Both CNA and the Plan remain as defendants.

Brothers terminated Whatley because of a sharp decline in his performance and an inability to get along with co-workers. His termination was effective that day; he gathered his personal belongings and went home.

Prior to his termination, Whatley had been suffering from a number of serious ailments for which he had received medical care. These included kidney disease, chronic kidney stones, hypertension, pulmonary disease, and sleep apnea. He had three major operations in his last year of work: one to remove sebaceous cysts, one to repair a hernia, and another to perform a kidney biopsy. In the last two months of his employment with Baker Brothers, Whatley passed four kidney stones; each time missing several days of work. On September 28, five days before he was fired, and on October 3, the day after his termination, appellant met with his physician concerning his sleep apnea.

In April 1996, Whatley filed a claim for disability benefits with CNA as a participant in the Plan, which was sponsored by Baker Brothers. CNA denied coverage; its stated reason was that Whatley had become disabled on October 3, but had been terminated on September 29.[3] The plan required a participant to be "totally

---

[3] This discrepancy between CNA's finding of Whatley's termination date and his last day of work may well have been Whatley's own fault. Whatley stated in his original claim for benefits to CNA that his last day of work was Friday, September 29. Baker Brothers' records also reflected that date. Apparently, he had worked a full day (plus overtime) on Friday, but had been fired upon arrival at work on Monday October 2. The exact date of his termination appears to be in dispute.

disabled"[4] while still employed with Baker Brothers; in other words, since he was fired while still able to work, any "total disability" arising after the termination would not be covered.[5]

In January 1997, Whatley filed this action in the Circuit Court of Houston County, Alabama, alleging a single count of wrongful denial of ERISA benefits under 29 U.S.C. § 1132(a)(1)(B). The case was removed to United States District Court for the Middle District of Alabama,[6] and in October 1997, following discovery, the court granted CNA's and the Plan's motion for summary judgment. The court held that, as a matter of law, Whatley did not qualify for benefits under the disability plan because he had been able to work up to his termination and therefore could not have been "totally disabled" until after that date. After judgment was entered, Whatley took this appeal.

II.

---

[4] In order to qualify as "totally disabled" under the policy, a participant must show:
(1) [he is] continuously unable to perform the substantial and material duties of his regular occupation;
(2) [he is] under the regular care of a licensed physician other than himself; and
(3) [he is] not gainfully employed in any occupation for which he is or becomes qualified by education, training or experience.

[5] Whatley exhausted his administrative remedies with CNA prior to bringing this suit.

[6] Jurisdiction in the district court was thus proper under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1), because the suit is an action to recover ERISA benefits under federal law.

This Court reviews the granting of summary judgment de novo, applying the same legal standards which bound the district court. Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995). Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this determination, we view all evidence and make all reasonable inferences in favor of the party opposing summary judgment. Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir.1994).

In a case alleging a denial of benefits under an ERISA-covered plan, we have created three standards of review of administrator decisions: "(1) de novo where the plan does not grant the administrator discretion; (2) arbitrary and capricious when the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest." Buckley v. Metropolitan Life, 115 F.3d 936, 939 (11th Cir. 1997). The parties agree that the CNA plan at issue does not grant its administrator discretion; the district court therefore made a de novo review of the denial of benefits under Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S. Ct. 948, 956-57, 103 L. Ed. 2d 80 (1989), and we do the same on appeal.

For appellant to obtain benefits under the Plan, he must have satisfied the definition of disabled while still employed with Baker Brothers. The relevant contract

language states that to be disabled he must be "continuously unable to perform the substantial and material duties of his regular occupation." The district court held that appellant did not meet this requirement as a matter of law for two reasons. First, the court found that appellant "persevered and continued working up until the day he was terminated . . . [and] offered no evidence that . . . his condition disabled him from performing required tasks." Part of this finding was based on appellant's working overtime on his last day of work. The district court acknowledged that appellant had to take frequent rests and had difficulty performing day-to-day, but stated that "[t]he essence of the requirement is performance, not quality of performance."

The district court's second ground for the grant of summary judgment was based on contract language requiring that a claimant not be "gainfully employed in any occupation for which he is or becomes qualified by education, training or experience." The district court stated that appellant did not meet this requirement either: "not only did [appellant] collect a paycheck, but . . . he performed his regular duties and even worked overtime on his last full day."[7]

---

[7] The district court stated that, in regard to this clause, "[p]laintiff's assertion that he was not gainfully employed in his occupation while he was an active employee is unsupported." The court appears to have given the two clauses at issue contradictory meanings. A claimant under the plan must become disabled while still employed, but the meaning given to this second clause apparently requires that claimant not be employed when the disability arises. More likely, the clause simply prevents a situation in which a claimant is not actively working for the plan's sponsor but is employed elsewhere (say in a position not precluded by his disability) and earning a paycheck.

Both of the district court's conclusions are based on the idea that appellant could not have been disabled before his termination because he came to work and collected a paycheck. Viewing all facts and drawing all inferences in favor of appellant, we disagree. Appellant has produced sufficient evidence from which a jury could find he was "continuously unable to perform the substantial and material duties" of his job before October 2.

Appellant's attending physician's report stated that he was disabled on October 2. The physician testified in deposition that appellant's condition, as of September 1995, would have made it difficult for him to perform day-to-day. Appellant offered an affidavit from a vocational expert who was of the opinion that, on the day of his termination, appellant's "combination of physical disabilities which contribute to his lower work tolerance, level of pain, fatigue, and medications" would make him "unable to meet competitive work demands and . . . vocationally disabled." There is no dispute that his kidney disease and chronic kidney stones, as well as other ailments, existed before October 2. Moreover, appellant was under the care of a physician for sleep apnea immediately before and immediately after his termination. Finally, appellant applied for and was granted Social Security benefits, retroactive to October

2.[8]

In its initial denial letter to appellant, CNA stated that, "[t]he medical documentation in our file indicates that you did not become disabled for your condition until 10/3/95." CNA acknowledged the Social Security Administration's approval of benefits in the same letter. CNA's own medical evaluations, viewed most favorably to appellant, similarly indicate an admission that, as of October 3, appellant met the criteria for disabled under the plan. CNA's nurse, who first evaluated appellant's claim for benefits, found documented evidence that there were changes in appellant's condition starting October 3 which would cause him to be totally disabled. But there is no logical basis (other than it being one day after appellant was fired) that October 3, rather than September 28 or earlier, would be the beginning of his disability. CNA has pointed to no evidence which establishes, as a matter of law, that appellant's total disability arose precisely one day after his termination and not earlier. A jury could reasonably conclude that, if appellant was disabled on October 3, he was disabled on September 28.

We similarly disagree with the district court's conclusion that appellant could

---

[8] We note that the approval of disability benefits by the Social Security Administration is not considered dispositive on the issue of whether a claimant satisfies the requirement for disability under an ERISA-covered plan. Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1452 n.5 (11th Cir. 1997). However, we have held that "[a] district court may consider the Social Security Administration's determination of disability in reviewing a plan administrator's determination of benefits." Kirwan v. Marriott Corp., 10 F.3d 784, 790 n.32 (11th Cir. 1994).

8

not have been totally disabled if he was able to come to work, perform some of the tasks assigned, and obtain a paycheck. We find our decision in Kirwan v. Marriott Corp., 10 F.3d 784 (11th Cir. 1994), particularly instructive. The disability plan in Kirwan, like the one at issue here, required a claimant to be "totally disabled" before being terminated.[9] Id. at 786. The plaintiff was fired because of a failure to work on several days and because of a violation of management policy. The evidence showed that, years before his termination, he had been diagnosed with Huntington's chorea, and as a result suffered from abnormal and involuntary limb movements for which he took numerous medications with various side effects. Id. at 785. His ERISA plan determined that, since he was able to work up until his termination and there was no determination of total disability by a physician before that point, he was not eligible for benefits. Id. at 786-87. The district court granted summary judgment for defendant, and we reversed.

We noted that there were (1) medical records indicating the existence of a serious medical condition (and associated problems with medication) before

---

[9] Appellees argue that Kirwan is distinguishable because the plan in that case defined total disability as "a Disability the result of which is that a Participating Employee is unable to perform any job for wage or profit for which the Participating Employee is or may become qualified by training, education, or experience." 10 F.3d at 786. First, we do not agree that there is any meaningful difference between the two, at least as to the question before us. Moreover, on review of a summary judgment we are required to draw all inferences in favor of appellant; a reasonable jury could determine that they are functionally identical for the interpretation required in this case.

termination, (2) an affidavit by a physician stating that Kirwan "may have" been totally disabled on the date of his termination, and (3) a determination by the Social Security Administration that Kirwan was disabled on that date. Id. at 790. The district court in this case had at least as persuasive facts before it; thus we must again conclude that "this evidence presents a genuine issue of material fact as to whether [Whatley] was totally disabled on the date of his termination." Id. at 790. We think a reasonable jury could conclude that appellant might meet the prerequisites for coverage under the policy and still show up for work, especially in light of his rapidly declining health around the time of his termination.

## III.

For the foregoing reasons, we VACATE the district court's entry of summary judgment in favor of Continental Casualty Company and Baker Brothers, Inc. Long Term Disability Plan, and REMAND the case for further proceedings consistent with this opinion.

SO ORDERED.